TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
CHRISTOPHER A. WENGER (DC Bar No. 991048)
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
    1400 New York Avenue, NW
    Washington, DC 20005
    Telephone: (202) 445-9670
    Facsimile: (202) 514-3708
    E-mail:   christopher.wenger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>GRIGOR GARIBYAN,<br><br>        Defendant. | No. CR 2:21-CR-00423-FMO<br><br>PLEA AGREEMENT FOR DEFENDANT<br>GRIGOR GARIBYAN |

    1.   This constitutes the plea agreement between Grigor Garibyan ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") and the Fraud Section of the Criminal Division of the United States (collectively, "the United States") in United States v. Garibyan, No. CR 2:21-CR-00423-FMO. This agreement is limited to the USAO and the Fraud Section of the Criminal Division of the United States Department of Justice and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to Counts 1 and 2 of the indictment in United States v. Garibyan, CR No. 2:21-CR-00423-FMO, which each charge defendant with theft of government property in violation of 18 U.S.C. § 641.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 21-105 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings.  Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver.  Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or

2

1  telephone, if VTC is not reasonably available.

2          ii.    Defendant consents under Section 15002(b) of the
3  CARES Act to proceed with his sentencing hearing by VTC or telephone,
4  if VTC is not reasonably available.

5          iii.   Defendant consents under 18 U.S.C. § 3148 and
6  Section 15002(b) of the CARES Act to proceed with any hearing
7  regarding alleged violations of the conditions of pretrial release by
8  VTC or telephone, if VTC is not reasonably available.

9          f.    Not commit any crime; however, offenses that would be
10 excluded for sentencing purposes under United States Sentencing
11 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
12 within the scope of this agreement.

13         g.    Be truthful at all times with the United States
14 Probation and Pretrial Services Office and the Court.

15         h.    Pay the applicable special assessments at or before
16 the time of sentencing unless defendant has demonstrated a lack of
17 ability to pay such assessments.

18         i.    To the extent applicable, make restitution in
19 accordance with the Court's order, and not seek the discharge of any
20 restitution obligation, in whole or part, in any present or future
21 bankruptcy proceeding.

22         j.    Defendant agrees that any and all criminal debt
23 ordered by the Court will be due in full and immediately.  The
24 government is not precluded from pursuing, in excess of any payment
25 schedule set by the Court, any and all available remedies by which to
26 satisfy defendant's payment of the full financial obligation,
27 including referral to the Treasury Offset Program.

28

1           k.   Complete the Financial Disclosure Statement on a form

2 provided by the United States and, within 30 days of defendant's

3 entry of a guilty plea, deliver the signed and dated statement, along

4 with all of the documents requested therein, to the United States by

5 either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

6 USAO Financial Litigation Section at 300 North Los Angeles Street,

7 Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's

8 ability to pay criminal debt shall be assessed based on the completed

9 Financial Disclosure Statement and all required supporting documents,

10 as well as other relevant information relating to ability to pay.

11           l.   Authorize the United States to obtain a credit report

12 upon returning a signed copy of this plea agreement.

13           m.   Consent to the United States inspecting and copying

14 all of defendant's financial documents and financial information held

15 by the United States Probation and Pretrial Services Office.

16           n.   Defendant understands and acknowledges that as a

17 result of pleading guilty pursuant to this agreement, defendant will

18 be excluded from Medicare, Medicaid, and all Federal health care

19 programs. Defendant agrees to complete and execute all necessary

20 documents provided by the United States Department of Health and

21 Human Services, or any other department or agency of the federal

22 government, to effectuate this exclusion within 60 days of receiving

23 the documents. This exclusion will not affect defendant's right to

24 apply for and receive benefits as a beneficiary under any Federal

25 health care program, including Medicare and Medicaid.

26                   THE UNITED STATES' OBLIGATIONS

27     3.   The United States agrees to:

28           a.   Not contest facts agreed to in this agreement.

1              b.    Abide by all agreements regarding sentencing contained
2    in this agreement.

3              c.    At the time of sentencing, provided that defendant
4    demonstrates an acceptance of responsibility for the offenses up to
5    and including the time of sentencing, recommend a two-level reduction
6    in the applicable Sentencing Guidelines offense level, pursuant to
7    U.S.S.G. § 3E1.1.

8              d.    Not seek a sentence of imprisonment above the high end
9    of, and make no recommendation as to the point within the applicable
10   Sentencing Guidelines range at which a term of imprisonment should be
11   selected.

12             e.    Except for criminal tax violations (including
13   conspiracy to commit such violations chargeable under 18 U.S.C.
14   § 371), not further criminally prosecute defendant for violations of
15   18 U.S.C. § 1343 arising out of defendant's conduct described in the
16   agreed-to factual basis set forth in paragraph 11 below regarding
17   defendant's submission of a loan application in June 2020 to the U.S.
18   Small Business Administration on behalf of GMA Home Health, Inc.,
19   that contained numerous material misrepresentations.  Defendant
20   understands that the United States is free to criminally prosecute
21   defendant for any other unlawful past conduct or any unlawful conduct
22   that occurs after the date of this agreement.  Defendant agrees that
23   at the time of sentencing the Court may consider the uncharged
24   conduct in determining the applicable Sentencing Guidelines range,
25   the propriety and extent of any departure from that range, and the
26   sentence to be imposed after consideration of the Sentencing
27   Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).
28

NATURE OF THE OFFENSES

4.    Defendant understands that for defendant to be guilty of the crimes charged in Counts 1 and 2, that is, theft of government property, in violation of Title 18, United States Code, Section U.S.C. § 641, the following must be true: (a) the defendant knowingly converted to defendant's use, or converted to the use of another, money with the intention of depriving the owner of the use or benefit of the money; (b) the money belonged to the United States; and (c) the value of the money was more than $1,000.

PENALTIES AND RESTITUTION

5.    Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 641 as charged in Counts 1 and 2 is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

7.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in

1 amounts greater than those alleged in the counts to which defendant
2 is pleading guilty.  In particular, defendant agrees that the Court
3 may order restitution to any victim of any of the following for any
4 losses suffered by that victim as a result: (a) any relevant conduct,
5 as defined in U.S.S.G. § 1B1.3, in connection with the offenses to
6 which defendant is pleading guilty; and (b) any charges not
7 prosecuted pursuant to this agreement as well as all relevant
8 conduct, as defined in U.S.S.G. § 1B1.3, in connection with those
9 charges.  The parties currently believe that the applicable amount of
10 restitution is approximately $67,591, which includes relevant conduct
11 and uncharged conduct, but recognize and agree that this amount could
12 change based on facts that come to the attention of the parties prior
13 to sentencing.

14     8.    Defendant understands that supervised release is a period
15 of time following imprisonment during which defendant will be subject
16 to various restrictions and requirements.  Defendant understands that
17 if defendant violates one or more of the conditions of any supervised
18 release imposed, defendant may be returned to prison for all or part
19 of the term of supervised release authorized by statute for the
20 offense that resulted in the term of supervised release, which could
21 result in defendant serving a total term of imprisonment greater than
22 the statutory maximum stated above.

23     9.    Defendant understands that, by pleading guilty, defendant
24 may be giving up valuable government benefits and valuable civic
25 rights, such as the right to vote, the right to possess a firearm,
26 the right to hold office, and the right to serve on a jury. Defendant
27 understands that he is pleading guilty to a felony and that it is a
28 federal crime for a convicted felon to possess a firearm or

ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to mandatory exclusion from providing services paid for under a federal health care benefit program for a minimum of five years, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

10.  Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the

1  underlying criminal conduct or all facts known to either party that
2  relate to that conduct.

3       At all times relevant to the Indictment, the United States
4  Department of Health and Human Services ("HHS"), through its agency,
5  the Health Resources and Services Administration ("HRSA"), oversaw
6  and administered the Provider Relief Fund.  Pursuant to the Provider
7  Relief Fund, HRSA distributed federal funds appropriated under the
8  Coronavirus Aid, Relief, and Economic Security ("CARES") Act to help
9  health care providers that were financially impacted by COVID-19, as
10 well as to provide care to patients who were suffering from COVID-19
11 and compensate providers for the cost of that care.

12      In order to rapidly provide funding during the pandemic, HRSA
13 automatically distributed Provider Relief Fund payments to providers
14 who met certain criteria; however, these providers were required to
15 comply with the terms and conditions of the Provider Relief Fund if
16 they retained the funding.  Among other ways, Provider Relief Fund
17 payment recipients attested to their compliance with the terms and
18 conditions, and confirmed that they received the funds, by submitting
19 an attestation to HRSA through an online portal.

20      Providers who attested to the terms and conditions acknowledged
21 that their commitment to full compliance with the terms and
22 conditions was material to the HHS Secretary's decision to disburse
23 Provider Relief Fund Payments to them.  Providers who attested made
24 additional certifications, including: (a) that they provided
25 diagnoses, testing, or care for individuals with possible or actual
26 cases of COVID-19 after January 31, 2020; and (b) that they would
27 only use the payment to prevent, prepare for, and respond to
28 coronavirus, and that the payment would reimburse the recipient only

1  for health-care-related expenses or lost revenues that were
2  attributable to coronavirus.

3      Defendant was the owner and Chief Executive Officer of GMA Home
4  Health, Inc. ("GMA"), a home health agency located in Van Nuys,
5  California.

6      On or about May 22, 2020, in Los Angeles County, within the
7  Central District of California, and elsewhere, defendant knowingly
8  and willfully stole, purloined, and converted to his own use and the
9  use of another money of HHS, a department of the United States, in
10  the amounts of $19,590 and $35,200, each exceeding $1,000, of an
11  approximately $57,591 payment from the Provider Relief Fund made to
12  GMA, to which defendant knew he was not entitled, with the intent to
13  deprive HHS of the use and benefit of that money.

14      GMA discharged all patients and ceased operating in or around
15  June 2019.  On or about April 16, 2020, defendant received a $57,591
16  Provider Relief Fund payment intended for GMA.  On May 1, 2020,
17  defendant deposited the $57,591 payment into a GMA bank account that
18  he opened after receiving the payment.  That same day, May 1, 2020,
19  defendant submitted an attestation to HRSA through its online portal,
20  attesting to GMA's receipt of the Provider Relief Fund payment and
21  attesting to comply with the Provider Relief Fund terms and
22  conditions.

23      Approximately three weeks later, on May 22, 2020, defendant
24  knowingly converted 95% of the Provider Relief Fund payment to his
25  personal use and the use of others by transferring $19,590 to an
26  escrow company in connection with a real estate purchase and by
27  transferring an additional $35,200 to a business in an apparent
28  attempt to purchase that business.  Defendant spent the balance of

1   the Provider Relief Fund payment, approximately $2,800, on various

2   retail purchases.  Contrary to his attestation, none the Provider

3   Relief Funds that the defendant transferred or spent were used in

4   compliance with the terms and conditions of the Provider Relief Fund.

5       In addition, in June 2020, after defendant received the Provider

6   Relief Fund payment, defendant applied for an Economic Injury

7   Disaster Loan ("EIDL") from the U.S. Small Business Administration

8   ("SBA") on behalf of GMA, even though GMA ceased operating in or

9   around June 2019.  Consequently, the EIDL application submitted by

10  defendant contained numerous material misrepresentations.  While the

11  SBA denied GMA's EIDL application, on or about June 18, 2020, GMA

12  received a $10,000 EIDL advance from the SBA, to which defendant knew

13  he was not entitled, and which defendant subsequently knowingly

14  converted to his personal use and benefit, including by making a $680

15  payment via Venmo on or about July 22, 2020, withdrawing $6,000 on or

16  about July 24, 2020, and spending the balance of the EIDL advance

17  proceeds on various retail purchases for personal use.

18      Defendant committed all the above acts knowingly and willfully,

19  and with the intent to deprive.

20                          SENTENCING FACTORS

21      12.  Defendant understands that in determining defendant's

22  sentence the Court is required to calculate the applicable Sentencing

23  Guidelines range and to consider that range, possible departures

24  under the Sentencing Guidelines, and the other sentencing factors set

25  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

26  Sentencing Guidelines are advisory only, that defendant cannot have

27  any expectation of receiving a sentence within the calculated

28  Sentencing Guidelines range, and that after considering the

                                  11

1  Sentencing Guidelines and the other § 3553(a) factors, the Court will
2  be free to exercise its discretion to impose any sentence it finds
3  appropriate up to the maximum set by statute for the crimes of
4  conviction.

5      13.  Defendant and the United States agree to the following
6  applicable Sentencing Guidelines factors:

7      Base Offense Level:                6        U.S.S.G. § 2B1.1(a)(2)
8      Loss Amount:                      +6        U.S.S.G. § 2B1.1(b)(1)(D)
9      Acceptance of Responsibility:     -2        U.S.S.G. § 3E1.1(a)
10     Total Offense Level:              10

11 The United States will agree to a two-level downward adjustment for
12 acceptance of responsibility if defendant has not committed, and
13 refrains from committing, acts constituting obstruction of justice
14 within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject
15 to paragraph 26 below, defendant and the United States agree not to
16 seek, argue, or suggest in any way, either orally or in writing, that
17 any other specific offense characteristics, adjustments, or
18 departures relating to the offense level be imposed.  Defendant
19 agrees, however, that if, after signing this agreement but prior to
20 sentencing, defendant were to commit an act, or the United States
21 were to discover a previously undiscovered act committed by defendant
22 prior to signing this agreement, which act, in the judgment of the
23 United States, constituted obstruction of justice within the meaning
24 of U.S.S.G. § 3C1.1, the United States would be free to seek the
25 enhancement set forth in that section and to argue that defendant is
26 not entitled to a downward adjustment for acceptance of
27 responsibility under U.S.S.G. § 3E1.1.

28

14.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.   Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

13

1         h.   Any and all rights to pursue any affirmative defenses,

2 Fourth Amendment or Fifth Amendment claims, and other pretrial

3 motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

5     17.  Defendant understands that, with the exception of an appeal

6 based on a claim that defendant's guilty pleas were involuntary, by

7 pleading guilty defendant is waiving and giving up any right to

8 appeal defendant's convictions on the offenses to which defendant is

9 pleading guilty.  Defendant understands that this waiver includes,

10 but is not limited to, arguments that the statute to which defendant

11 is pleading guilty is unconstitutional, and any and all claims that

12 the statement of facts provided herein is insufficient to support

13 defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15     18.  Defendant agrees that, provided the Court imposes a total

16 term of imprisonment on all counts of conviction of within or below

17 the range corresponding to an offense level of 10 and the criminal

18 history category calculated by the Court, defendant gives up the

19 right to appeal all of the following: (a) the procedures and

20 calculations used to determine and impose any portion of the

21 sentence; (b) the term of imprisonment imposed by the Court; (c) the

22 fine imposed by the Court, provided it is within the statutory

23 maximum; (d) to the extent permitted by law, the constitutionality or

24 legality of defendant's sentence, provided it is within the statutory

25 maximum; (e) the amount and terms of any restitution order, provided

26 it requires payment of no more than $67,591; (f) the term of

27 probation or supervised release imposed by the Court, provided it is

28 within the statutory maximum; and (g) any of the following conditions

14

of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7). Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19. The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 10 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $67,591.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a

1  claim and finding that entry into this plea agreement was
2  involuntary, then (a) the United States will be relieved of all of
3  its obligations under this agreement; and (b) should the United
4  States choose to pursue any charge or any civil, administrative, or
5  regulatory action that was not filed as a result of this agreement,
6  then (i) any applicable statute of limitations will be tolled between
7  the date of defendant's signing of this agreement and the filing
8  commencing any such action; and (ii) defendant waives and gives up
9  all defenses based on the statute of limitations, any claim of pre-
10 indictment delay, or any speedy trial claim with respect to any such
11 action, except to the extent that such defenses existed as of the
12 date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

14     21.  Defendant agrees that if any count of conviction is
15 vacated, reversed, or set aside, the United States may: (a) ask the
16 Court to resentence defendant on any remaining count of conviction,
17 with both the United States and defendant being released from any
18 stipulations regarding sentencing contained in this agreement,
19 (b) ask the Court to void the entire plea agreement and vacate
20 defendant's guilty plea on any remaining count of conviction, with
21 both the United States and defendant being released from all their
22 obligations under this agreement, or (c) leave defendant's remaining
23 conviction, sentence, and plea agreement intact.  Defendant agrees
24 that the choice among these three options rests in the exclusive
25 discretion of the United States.
26 //
27 //
28

## EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney.

## BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas; and (b) the United States will be relieved of all its obligations under this agreement.

24.   Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge or any civil, administrative, or regulatory action that was not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

17

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

25. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

26. Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and

determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

27.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

19

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          **2/28/2022**
Christopher A. Wenger                   Date
Trial Attorney, Fraud Section

_____          **2-23-22**
Grigor Garibyan                         Date
Defendant

_____          **2/23/2022**
Craig Missakian                         Date
Attorney for Defendant Grigor
Garibyan

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

20

1   contained in this agreement.  No one has threatened or forced me in

2   any way to enter into this agreement.  I am satisfied with the

3   representation of my attorney in this matter, and I am pleading

4   guilty because I am guilty of the charges and wish to take advantage

5   of the promises set forth in this agreement, and not for any other

6   reason.

7   _____        2/23/22
                                            _____
8   Grigor Garibyan                        Date
    Defendant

9

10                  CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am Grigor Garibyan's attorney.  I have carefully and

12  thoroughly discussed every part of this agreement with my client.

13  Further, I have fully advised my client of his rights, of possible

14  pretrial motions that might be filed, of possible defenses that might

15  be asserted either prior to or at trial, of the sentencing factors

16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge: no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is an informed and voluntary one; and the factual basis set

23  forth in this agreement is sufficient to support my client's entry of

24  guilty pleas pursuant to this agreement.

25  _____        2/23/2022
                                            _____
26  Craig Missakian                        Date
    Attorney for Defendant Grigor
27  Garibyan

28